Argued July 10, reversed and remanded September 18, 1968

# STATE OF OREGON, *Respondent, v.*
# RUTH BARNETT, *Appellant.*

445 P. 2d 124

*Leo Levenson,* Portland, argued the cause for appellant. With him on the brief was Oscar D. Howlett, Portland.

*Thomas H. Denney,* Deputy District Attorney, Oregon City, argued the cause for respondent. With him on the brief was Roger Rook, District Attorney, Oregon City.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, DENECKE and RODMAN, Justices.

DENECKE, J.

The defendant was found guilty of abortion and she appeals upon the ground that the trial court erred in prohibiting her counsel from asking prospective jurors on voir dire examination their religious faith.

This issue was not decided in another case involving the defendant, *State v. Barnett,* 249 Or 226, 437 P2d 821 (1968). We stated in that opinion that defendant's counsel should have been permitted to ask upon voir dire whether the prospective juror had any religious affiliation that would prevent him from giving the defendant a fair trial.

In the instant case the defense was permitted to ask the prospective juror whether he had any religious belief or affiliation that would prevent him from being a fair juror. The defense was not permitted to follow up the juror's answer by asking what his religious faith was.

The Oregon Constitution does not prohibit a prospective juror from being asked his religious belief. Art. I, § 6, provides:

"No person shall be rendered incompetent as a witness, or juror in consequence of his opinions on

matters of religeon (sic) ; nor be questioned in any Court of Justice touching his religeous (sic) belief to affect the weight of his testimony."

The first part of this section concerns the competency of any person to act as a witness or juror because of his religious beliefs. The defendant is not contending that the venireman's answer as to his religious belief might render him incompetent to act as a juror and subject him to challenge for cause; therefore, we do not address ourselves to that issue.

The second part of the constitutional section prohibits the questioning of witnesses as to their religious beliefs for the purpose of affecting their credibility. In *State v. Estabrook*, 162 Or 476, 497-505, 91 P2d 838 (1939), the district attorney cross-examined a witness about the tenets of her religion. We held that this was a violation of the second portion of the above-quoted section of the Oregon Bill of Rights.

The defendant's contention is that she has a right to know any information about the veniremen which could possibly cause them to be prejudiced and that such information is vital to her making intelligent peremptory challenges. There is a widely accepted belief that certain religious faiths feel more strongly about abortion than do others.

■ We hold that the trial court erred in not permitting the defendant to ask the prospective jurors their religious faiths.

"The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. [Citations] * * *. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejec-

tion for a real or imagined partiality that is less easily designated or demonstratable. * * *. It is often exercised upon the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another,' * * *, upon a juror's 'habits and associations,' * * *, or upon the feeling that 'the bare question [a juror's] indifference may sometimes provoke a resentment,' * * *. It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. * * *." *Swain v. Alabama,* 380 US 202, 220, 85 S Ct 824, 13 L ed2d 759 (1965). See *State v. Steeves,* 29 Or 85, 96, 43 P 947 (1896).

It is true that the prospective jurors stated that they did not have any religious beliefs that would prevent them from being impartial jurors and from giving the defendant a fair trial. A party does not need to be limited by that answer, however; he can pursue the matter and find out the particular religious belief of the venireman. A party can make his own determination whether a venireman with a particular belief will be impartial or unprejudiced and exercise his peremptory challenge accordingly.

*Wasy v. State of Indiana,* 234 Ind 52, 123 NE2d 462, 464, 46 ALR2d 1389 (1955), decided the issue in accordance with our opinion. *State v. Adams,* 200 Md 133, 88 A2d 556, 559-560 (1952); *State v. Weiss,* 130 NJL 149, 31 A2d 848, 850-851, affm'd 35 A2d 895 (1943); and *People v. Daily,* 157 Cal App2d 649, 321 P2d 469, 472 (1958), all hold to the contrary; however, we cannot agree with their reasoning. See cases collected at 54 ALR2d 1204, 1215-1217 (1957).

 The scope of voir dire examination is in the trial court's discretionary power to efficiently and expeditiously conduct the trial. In exercising that power,

the trial court can consider, among other factors, whether counsel has had the opportunity to question sufficiently upon a certain subject or whether the question has any reasonable relevance to the venireman's qualifications or possible prejudices. The trial court cannot, however, in the exercise of its discretion prohibit counsel from seeking information about prospective jurors which is obviously relevant. *State v. Steeves*, supra (29 Or at 96); *State v. Nagel*, 185 Or 486, 509, 202 P2d 640, cert den 338 US 818, 70 S Ct 60, 94 L ed 495 (1949).

Reversed and remanded.